UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA             :

   -*v.*-                                              :        21 Cr. 264 (JLC)

CHAIM DEUTSCH,                                  :

                 Defendant.          :

------------------------------------------------------------x


## THE GOVERNMENT'S SENTENCING MEMORANDUM


                                           AUDREY STRAUSS
                                           United States Attorney
                                           Southern District of New York


Eli J. Mark
Assistant United States Attorney
- Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA              :

   -v.-                                              :         21 Cr. 264 (JLC)

CHAIM DEUTSCH,                              :

                Defendant.              :

-------------------------------------------------------------x

## THE GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Chaim Deutsch is scheduled to be sentenced on July 29, 2021, at 10:00 a.m. The Government respectfully submits this memorandum in connection with that sentencing.

## PRELIMINARY STATEMENT

The facts in this case demonstrate that the defendant Chaim Deutsch – an elected official and community leader – engaged in a multi-year scheme to file false tax returns to decrease his taxable income from his side-business in real estate management. At the same time Deutsch was serving as a New York City Council Member, he was not paying his fair share of taxes to fund the very government services he was helping to oversee. The defendant's conduct spanned at least three separate tax years and involved the claiming of false and fictitious deductions on his tax returns totaling approximately $268,000, including even the apartment he rented in order to maintain residency in his council district, and leading to tax loss to the United States Treasury of approximately $82,906, exclusive of interest and penalties.

The United States Sentencing Guidelines ("Guidelines"), and the defendant's applicable Guidelines range of 10 to 12 months' imprisonment, appropriately reflect the defendant's conduct. To serve the legitimate purposes of sentencing, including promotion of respect for the law and

general deterrence, the Government requests that the Court impose a Guidelines sentence of imprisonment.

## BACKGROUND

### A. The Defendant's Background and Work History

The defendant has been involved in politics for approximately 25 years, first as a council aide, then as chief of operations for a council member, and for the last almost eight years as the elected council member for the 48th District of New York City, which includes various parts of South Brooklyn.[1] (Probation Investigation Report, dated July 12, 2021 ("PSR") ¶¶ 8, 67, 71, 72.) Beginning in or about 2004, Deutsch owned and operated Chasa Management, a real estate management company.[2] (PSR ¶ 9.) Prior to commencing his first term as a council member, Deutsch also was a 50% owner of another management company, Spencer & Myrtle, LLC ("Spencer Myrtle"). (PSR ¶ 9.)

Deutsch was well-compensated for his role managing real estate. Through Chasa Management, Deutsch received income from various real estate businesses controlled by a pair of Brooklyn-based real estate landlords and developers – primarily from Spencer Myrtle and M&S Skillman Realty, LLC, as well as from Jadabe Properties Corp., 144 Spencer Realty, LLC, and Davbel Properties, LLC.[3] (PSR ¶ 11.) Deutsch, through Chasa Management received more than

---

[1] On or about April 27, 2021, subsequent to Deutsch's plea in the instant case, he was determined to have vacated his elected office by the New York City Council and the New York City Law Department, as a result of violating his oath of office by defrauding the federal government in connection with the instant tax offense. Since May 2021, Deutsch has been employed as a full-time property manager with a six-figure salary. (PSR ¶ 65.)

[2] According to Chasa Management's 2008 corporate tax return, the entity was incorporated on February 24, 2004.

[3] Deutsch failed to report various positions on publicly filed conflict of interest disclosure forms pertaining to roles he reportedly had with some of these real estate companies, according to documents he had filed with the city using variations of his name. (PSR p.5 n.2.) Deutsch also

$120,000 annually, including even after he became a council member, until the end of 2017.[4]  (PSR ¶¶ 12, 19.)  Notably, according to annual public disclosure filings, Deutsch reported one of the highest, if not the highest, annual outside compensation of any council member,[5] until council members were banned from outside employment as a result of a change in the law that raised their council member salaries.

### B.  The Offense Conduct, Relevant Conduct, and Restitution

During the tax years 2013 through 2015, Deutsch, an experienced businessman and elected official, filed individual and corporate tax returns that substantially decreased his tax liability by claiming false and fictitious business deductions.  (PSR ¶¶ 14, 15.)  As an initial matter, Deutsch's individual income tax returns (IRS form 1040s) underreported his flow through business income from Chasa Management as a result of a scheme to falsely characterize personal expenses paid from the company's bank account as business deductions on the company's corporate income tax returns (IRS form 1120s).  (PSR ¶ 15.)  In particular, Chasa Management's corporate income tax returns falsely deducted as business expenses the rental payments for an apartment Deutsch

---

failed to disclose on those conflict of interest forms interactions he had with the City's Department of Buildings relating to assistance he sought for the owners of those companies with a real estate development project.

[4]   In addition, less than one month before the general election, Deutsch also received $15,000 from Spencer Myrtle, which he used, in part, to pay the initial rent and security deposit on an apartment that he had obtained in the 48th District in order to comply with city council member residency requirements.  (PSR ¶ 13.)

[5]   The annual disclosure filings required council members to report their outside income within various range bands of minimum and maximum outside compensation, instead of requiring disclosure of the specific amounts of income.  According to press reports, Deutsch's minimum outside annual compensation was the highest of any city council member prior to outside employment being banned for city council members.  *See* Jennifer Fermino, Erin Durkin and Greg B. Smith, *NYC City Council members offering to give up outside income – something most of them don't have – for 71% raise*, NY Daily News (Nov. 12, 2015), available at http://www.nydailynews.com/news/politics/city-council-give-71-raise-article-1.2433257.

3

maintained in the 48th District but did not live in, along with falsely characterizing utility, water and repair and maintenance expenses as business expenses. (*Id.*) Deutsch also falsely deducted automobile and phone expenses, as well as routine living expenses such as groceries and even children's clothing, on his corporate returns. (*Id.*)

In addition, Deutsch further decreased his tax liability on his individual tax returns for those years by filing fraudulent Schedule C's that declared fictitious business expenses. Specifically, during each relevant year, he deducted an additional $16,800 in rent, which was equivalent to the annual rent of the apartment that he rented in order to run for City Council.[6] (PSR ¶ 14.) Deutsch also claimed fictitious expenses for vehicles, phones and utilities on his Schedule C. (*Id.*)

As a result of the false deduction schemes, Deutsch received federal tax refunds in each of the relevant tax years. Specifically, in tax year 2013, Deutsch's false filings generated a federal tax refund of $1,937; in tax year 2014, Deutsch's false filings generated a federal tax refund of $262; and in tax year 2015, Deutsch's false filings generated a federal tax refund of $7,511.

In preparing his tax returns and books for Chasa Management, Deutsch employed a family-owned tax preparer and accounting firm based in Brooklyn. (PSR ¶ 16.) According to the individuals who helped prepare Deutsch's taxes, there were instances when Deutsch directed them to classify or reclassify additional expenses as business-related to decrease his tax liability. (*Id.*) According to one of the tax preparers, only after Deutsch was satisfied that the purported business expenses had sufficiently decreased his tax liability were the tax returns finalized and filed. (*Id.*)

---

[6] Moreover, during 2013, Deutsch claimed an entire year's worth of rental payments on his Schedule C, despite having only paid two months' rent for the apartment during that particular year.

4

After Deutsch learned of the investigation, he used a different tax preparer to assist in the preparation of his subsequent years tax returns.[7]

In total, for tax years 2013 through 2015, Deutsch claimed approximately $157,000 in false business expenses on Chasa Management's returns and approximately $111,000 in false business expenses on his individual income tax returns, causing a total tax loss of approximately $82,906.

As a result of the foregoing conduct, Deutsch pleaded guilty to filing a false tax return and a tax loss to the IRS of more than $82,000. As part of the plea, Deutsch stipulated that the Sentencing Guidelines offense level for his count of conviction was 12, with an attendant sentencing range of 10-12 months in prison. (PSR ¶ 5.)

Deutsch also agreed to make restitution in the amount of the tax due and owing as a result of filing amended tax returns for tax years 2013 through 2015, and in no case less than $82,076 plus interest. (PSR ¶ 5.) As discussed above, the tax loss is $82,906, which is the same amount as reflected in amended tax returns Deutsch recently filed in advance of sentencing in compliance with the terms of his plea agreement. Accounting for interest due and owing on that tax loss through the date of sentencing,[8] the Court should enter restitution to the IRS in the amount of $107,007.05.[9] As of today, the defendant has not paid the tax due and owing as a result of the

---

[7] Deutsch still has not fully paid his tax due from tax year 2016, which was the first year prepared and filed after he learned of the investigation, although he remains current with an installment plan entered into with the IRS.

[8] As of the date of sentencing, the interest due for tax year 2013 is $7,272.30, for tax year 2014 is $8,792.86, and for tax year 2015 is $8,036.59, for a total interest of $24,101.75.

[9] Restitution is not solely in the amount of the tax loss, as reflected in the PSR (*see* ¶ 23), but also should include interest through the date of sentencing as well, as the defendant agreed to in his plea agreement (PSR ¶ 5). In addition, under the plea agreement, although not a part of the requested restitution order, the defendant has agreed not to contest the applicability of any civil fraud penalties. (*Id.*)

crime or the relevant conduct, despite the defendant having savings, equity in his home, a steady job, and the expectation of a pension from his municipal employment.

## DISCUSSION

### I. A Guidelines Sentence Is Warranted

In this case, a Guidelines term of imprisonment is appropriate and would meet the objectives set forth in 18 U.S.C. § 3553(a), given (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (B) to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(1), (2)(A)-(B).

#### A. Sentencing Guidelines

As the Court is aware, courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, consistent with the Probation Department's calculations, the parties agree that the applicable advisory Guidelines range include 10-12 months' imprisonment and an applicable fine range of $5,500 to $55,000.[10] (PSR ¶¶ 84, 92.)

---

[10] Section 3572(a) of Title 18, United States Code, sets forth the factors to be considered by the court before imposing a fine, in addition to the factors set forth in Section 3553(a). Section 5E1.2 of the Guidelines states that a court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The Guidelines further provide guidance on determining the size of the fine, and state that, "[t]he amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." *Id*. The defendant bears the burden of demonstrating an inability to pay a fine. *See United States v. Camargo*, 393 F. App'x 796, 798 (2d Cir. 2010); *United States v. Salameh*, 261 F.3d 271, 276 (2d Cir. 2001).

### B. The Nature and Seriousness of the Offense

Deutsch's conduct was indisputably serious. Tax fraud is theft from the pockets of every taxpaying citizen of this nation. As described above, Deutsch filed false tax returns, both individually and for his corporation, over a period of years, turning taxes owed on his outside income into federal tax refunds through the false and fraudulent classification of personal, and sometimes fictitious, expenses as business deductions. This conduct was deliberate, repeated, and engaged in while Deutsch was an elected official supposedly serving in the best interests of his constituents. In doing so, Deutsch prioritized his own financial interests above the orderly funding of government services.

Tax offenses, like Deutsch's, are serious, costly, and damaging to our nation's system of taxation. *See United States v. Ture*, 450 F.3d 352, 357 (8th Cir. 2006) ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system."). The Supreme Court has long-recognized that "[t]he United States has relied for the collection of its income tax largely upon the taxpayer's own disclosures rather than upon a system of withholding the tax from him by those from whom income may be received." *Spies v. United States*, 317 U.S. 492, 495 (1943). The orderly operation of government and our society relies on its citizens and residents to report timely, completely, and honestly all taxes they owe, which is why Congress has made it a criminal offense to file false returns or evade income taxes. Indeed, as the Second Circuit has recognized, "tax crimes represent an especially damaging category of criminal offenses," which "strike at the foundation of functioning government." *United States v. Zukerman*, 897 F.3d 423, 427 (2d Cir. 2018) (cleaned up). *See generally Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) ("[t]axes are what we pay for a civilized society. . . .") (Holmes, J., dissenting).

7

The tax offense at issue in this case has cost the United States Treasury, and the nation's honest taxpayers, not only the taxes that should have been paid, but the time value of the money – that is, the interest on the unpaid taxes. The offense conduct also resulted in significant losses to the New York State taxing authorities. Moreover, the offense conduct in this case is further aggravated by the fact that Deutsch used his false deductions to avoid the cost of the apartment he maintained for residence in his council district (which the PSR suggests he "kept" but did not reside in, *see* PSR ¶ 51), and with the benefit of the taxes he avoided was able to subsequently purchase a larger, more expensive home in the council district. Although Deutsch did not use these deductions to fund an extravagant lifestyle, there were no mitigating circumstances related to his deliberate and repeated misconduct, as he already received a significant salary as a council member and, in addition, had one of the highest outside incomes of any council member. The defendant's conduct was not aberrant or prompted by a brief lapse in judgment, but was sustained over multiple years. He also did not suffer from any mental health or substance abuse disorder. (PSR ¶¶ 56, 58.)

Furthermore, Deutsch's conduct was particularly harmful because every time a public official commits a crime, his or her conduct further undermines public trust in honest government. This is particularly the case when elected officials themselves do not follow the most basic generally applicable laws, like paying taxes. While Deutsch may have done good deeds in his personal and political life, as we expect of all who dedicate their career to public service, given the special position of trust and obligation that accompanied his office, those good deeds should not be a basis to avoid otherwise-warranted punishment for his crimes. *See United States v. Serafini*, 233 F.3d 758, 773 (3d Cir. 2000) (good works as a legislator "reflect[] merely the political duties ordinarily performed by public servants" and "if a public servant performs civic and

8

charitable work as part of his daily functions, these should not be considered in his sentencing because we expect such work from our public servants"); *United States v. Morgan*, No. 13-6025, 2015 WL 6773933, at *22 (10th Cir. Nov. 6, 2015) (finding that sentencing judge erred in sentencing the former President Pro Tem of the Oklahoma State Senate to probation for accepting a $12,000 bribe, in part, by giving undue weight to letters of support: "The number of letters was certainly impressive but not surprising. As the Government aptly points out: 'One does not become President Pro Tem without the confidence of many supporters, some quite influential.' The letters must be viewed in that light."). *See also United States v. Vrdolyak*, 593 F.3d 676, 682 (7th Cir. 2010) ("[I]t is usual and ordinary, in the prosecution of similar white-collar crimes . . . to find that a defendant was involved as a leader in community charities, civic organizations, and church efforts," and the defendant "should not be allowed to treat charity as a get-out-of-jail card" (citation and internal quotation marks omitted)). Deutsch's personal history does not excuse what he did—and if anything exacerbates the impropriety of his conduct.

**C. Deterrence**

By imposing a Guidelines term of imprisonment, the Court would send a clear message that tax offenses committed by elected officials are not only wrong but carry significant personal consequences. Deutsch's false filing of tax returns year after year show that such a message is necessary. If the justice system is to have an impact on tax evasion and help restore faith that no one – not even elected officials – are above paying their fair share of taxes, then the sentence it imposes must demonstrate the consequences for tax avoidance are significant. A non-incarceratory sentence for an elected official would substantially diminish this deterrent message.

The need for deterrence in tax fraud cases is particularly acute. A recent IRS study of tax compliance estimates that only 83.1% of individuals are compliant with their tax obligations,

9

leaving a yearly tax gap of over $458 billion dollars in unreported and uncollected taxes. *See* "Tax Gap Estimates for Tax Years 2008-2010," April 2016, available at www.irs.gov/pub/newsroom/tax%20gap%20estimates%20for%202008%20through%202010.pdf. This means that hundreds of billions of dollars are lost every year because people like Deutsch — who otherwise fully enjoy the myriad public benefits that the tax system supports — choose to shirk their responsibilities as taxpayers. As a result, a meaningful sentence, particularly where a case has received attention like this one has, will appropriately forewarn others of the consequences for engaging in multi-year tax fraud. *See* Joshua D. Blank, *In Defense of Individual Tax Privacy*, 61 Emory L.J. 265, 321 (2011) ("Studies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect."); W. Boning, J. Guyton, R. Hodge, & J. Slemrod, *Heard it through the Grapevine: The Direct and Network Effects of a Tax Enforcement Field Experiment on Firms*, Journal of Public Economics 190 (2020) ("The effects of tax enforcement directed at one taxpayer are not limited to that taxpayer's behavior. Increased enforcement deters evasion . . . by changing taxpayers' perceptions of the probability that evasion will be detected and punished").

As Judge Edward Weinfeld aptly observed, in a pre-Guidelines setting, there is an important deterrent value of incarceration in tax cases:

> This court has long had the view that income tax evasion cases where defendants are found guilty, whether upon their pleas of guilty or after jury verdict, require a term of imprisonment. The income tax laws of our country in effect reflect an honor system under which the citizens are required to cooperate with the government, to file true and accurate returns. I have been of the view that unless a citizen lives up to his responsibility there must follow, barring an extraordinary situation, a term of imprisonment as an example to, other people in the community.

*United States v. Tana*, 85 Cr. 1119 (EJW) (June 17, 1986; Tr. at 12-13); *see also United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) ("Without a real possibility of imprisonment, there would

be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.").

Likewise, more recently, in a case involving a business owner defendant who used unreported corporate receipts over a three-year period to pay payroll and personal expenses, resulting in a tax loss of between $250,000 and $550,000 and a Sentencing Guidelines range of 18 to 24 months, Judge Alvin K. Hellerstein imposed an 18-month within-Guidelines sentence on the 54-year-old, first-time offender, explaining that:

> I think the obligation to pay taxes is basic to our civilization. It makes it possible to have a lawful society. You read every day of crimes and violence in our country. But so much so in so many other countries where people can't get out of their house without fearing their lives. Where the path of getting food is strewn with threats and violence against them.
>
> In order to have a society, you must have money. You must be able to pay what society requires. And its basic functions of policing and other functions of making sure there is a safety net under people. If people don't pay their taxes, they cheat each other. You're not paying taxes cheats me. If I don't pay my taxes, I cheat you. It's as bad, in many ways, as ripping off the delivery worker that the last fellow did. You're ripping off everybody else by not paying your share of taxes. So I look upon this and I think the guidelines have it right here. I think a year and a half, 18 months, is a just sentence. I impose it.
>
> I think you're going to have to reflect on what you did and the seriousness of what you did. You just can't make it good by paying the back tax. You've got to understand that when you do something bad, you get punished. It's got to be a lesson to everyone else. Everyone else is tempted to draw a line and cheat a little bit, get an extra edge.

*United States* v. *Joseph Ciccarella*, 16 Cr. 738 (AKH) (ECF No. 19, Sentencing Tr., at 22-23).

And, as Judge Denise L. Cote trenchantly observed when imposing sentence on husband and wife Jeffrey and Marla Stein, a physician and an attorney who carried out a joint scheme to cheat on their taxes for multiple years, including claiming false and fraudulent business deductions on their Schedule C and cheating on the employment taxes relating to an off-the-books domestic employee:

11

> The presentence report emphasizes the greed involved with these offenses. Besides the greed, I think of the deceit, the disloyalty shown to a household employee and to an accountant, their irresponsibility as citizens. After all, taxes [are] one of the few things our country asks of most of us. One of the few things we can do as part of citizenship and living in this country is to pay our taxes. We all benefit from it. We don't need to think about whether somebody is taking care of our security as a nation, or, more locally, our police department or our fire department. We pay our taxes, we come to expect these things, and, of course, there are a whole host of services our government provides to us, all of us, every citizen, but I like to think about writing that tax check as also a way of our support for our government taking care of those who are most in need in society. Let me give just one example here that hopefully will strike home for the defendants. The defendant went to high school in New York City at one of the best high schools in our country, the Bronx High School of Science. Tax dollars provided his education. So I have been thinking about this sentence. Here I have two people who have great talent, been very successful in life, and who I am going to send to prison because the issues of general deterrence are just too important not to do that.

*United States v. Jeffrey Stein & Marla Stein*, 15 Cr. 195 (DLC) (July 31, 2015) (ECF No. 23; Sent. Tr. at 7-8).

While the existing consequences of Deutsch's misconduct are no doubt severe, including that he was prosecuted, will be required to pay restitution, and has lost his job, and will likely specifically deter Deutsch from committing further crimes, they are not sufficient for purposes of general deterrence. Indeed, the collateral consequences Deutsch faces are no different than those typically associated with any defendant's federal crimes, and yet Deutsch was not deterred, despite a career spent in public service and almost eight years in the municipal legislature. Moreover, Deutsch's personal humiliation should not mitigate his sentence; that approach would lead to indulgence for well-regarded defendants guilty of misconduct, rather than the more severe sentence such conduct deserves and deterrence requires. Something more than a criminal record and payment of taxes that were long avoided is required to adequately deter others.

In short, voluntary compliance with the Internal Revenue Code is undermined if the general public believes there are no meaningful repercussions for willfully failing to comply with the tax

12

laws. Sentencing Deutsch to a meaningful term of incarceration is, therefore, necessary to send the message to others in our society that elected officials are not above the law and that repeated efforts to cheat on one's taxes will be met with serious punishment.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a Guidelines sentence of imprisonment, a sentence that is sufficient but not greater than necessary to serve the legitimate purposes of sentencing. Such a sentence would reflect the seriousness of Deutsch's crimes, afford just punishment, and send a message that no one is above the law.

Dated: New York, New York
       July 22, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:   s/ Eli J. Mark
      Eli J. Mark
      Assistant United States Attorney
      (212) 637-2431