

*Henry E. Mazurek*
*Partner*
Direct (212) 655-3594
Fax (212) 655-3535
hem@msf-law.com

July 28, 2021

**VIA ECF**

Hon. James L. Cott
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Chaim Deutsch*, No. 21 Cr. 264 (JLC)

Dear Judge Cott:

    We feel compelled to supplement Mr. Deutsch's sentencing materials with a brief reply to some of the arguments propounded in the government's sentencing memorandum (*see* ECF Doc. 14) ("Gov. Sent. Mem."), and to correct and clarify some of the factual background presented therein.

    We respond principally to the government's argument that a Guidelines sentence is necessary: (1) to provide just punishment for this offense conduct; and (2) for general deterrence purposes. We respectfully submit that these objectives can be met without imposing a sentence of incarceration. Given the particular facts and circumstances of this case, a "sufficient, but not greater than necessary" sentence under the objectives of 18 U.S.C. § 3553(a) is a sentence of probation, full restitution (including interest), and community service.

    For the reasons stated in Mr. Deutsch's sentencing memorandum, the Court should decline to require Mr. Deutsch's incarceration, which will inevitably cause him to lose his new job as a building manager and separate from his family for months. This Court is faced now with the weighty task of deciding what additional punishment – beyond Mr. Deutsch's forfeited profession as public officer, his ruined reputation, his sudden loss of livelihood, the agony of his office staff's loss of jobs, and the realization he will need to sell his family's home to complete restitution for his actions – is sufficient, but not greater than necessary, to satisfy federal sentencing law.

    We respectfully submit that this first-time non-violent offender, a misdemeanant (a rarely offered criminal disposition in this district), who has dedicated more than a generation of time in public service and performed a lifetime of good deeds, deserves this modicum of leniency.

The government asks for a Guidelines sentence that gives no nod to mitigation for these facts, including its own decision to charge the lesser misdemeanor offense. Indeed, the government claims that the Court should actually punish Mr. Deutsch more harshly for his decision to pursue public service, because he committed this tax offense while an elected official (although his conduct here was not connected to his government job). While Mr. Deutsch did wrong here, his immediate and complete acceptance of responsibility – before criminal charges were even brought against him – shows sincere remorse and an acknowledgment of the wrongfulness of his conduct. The rest of Mr. Deutsch's life embodies the ideals of hard work, generosity of spirit, and compassion for others. This consistent history is more indicative of the measure of the man. He was at the pinnacle of his life and profession – and all of that vanished in an instant because of his conduct in this case. Mr. Deutsch didn't spend lavishly, or go on luxury trips, or even take vacations, he simply used the money he avoided on taxes to pay for food, a home in his re-zoned district, and to provide basic comforts for his children.[1] He was wrong to not pay these taxes, and

---

[1] There are no excuses for Mr. Deutsch's conduct in misreporting his taxes. However, it is relevant to correct some of the alleged facts presented in the government memorandum. First, the government states in a few places that one of the personal expenses that Mr. Deutsch falsely deducted as a business expense was the rent and maintenance "for an apartment Deutsch maintained in the 48th District but did not live in." (Gov. Mem. at 3-4, 9.) When Councilman Mike Henry of the 48th District was term-limited out of office in 2013, he urged his then-chief of operations, Chaim Deutsch, to run for the open seat. At that point, Chaim already had dedicated more than 16 years as an aide to that district's two different Council members. The 48th District had always been Chaim's city council district of residence, but in 2013, the City Council and Mayor agreed to re-zoning of the district, which suddenly placed Mr. Deutsch's family home outside the district's limits. *See* https://www1.nyc.gov/assets/districting/downloads/pdf/Feb6_memo.pdf* ("The revised plan unites the Russian-American community in Brighton Beach, Manhattan Beach, and the housing complexes west of Coney Island Avenue. The northern boundary retracts to relinquish a portion of Midwood so that District 45 could gain population to be within the 24 allowable deviation and expands eastward to acquire more of Sheepshead Bay.") Because Mr. Deutsch lived his entire adult life in District 48 and gave 16 years of service to that district, he decided to run for the open Council seat in District 48 even though his home was suddenly just outside the new boundaries set in re-zoning. However, to be compliant with City rules, Mr. Deutsch needed to maintain his primary residence within the district's boundaries. He, therefore, took on the added expense of renting a small apartment within the new district limits, and agreed to reside there during weekdays to be compliant with City rules. He did this at great personal sacrifice to him and his wife. He had to separate from his family of five children for five days during the week, and missed out on evenings with the kids and quiet time with his wife. He also incurred an additional annual expense of $17,000, just for rent. However, the dream of being a City Council member, where he could lead initiatives of his own and guide new legislation through City Council as a leader, rather than staff member, overrode the cost to Chaim and his family. He rented the apartment, and despite being only several blocks from where his family slept, he slept alone most nights to comply with the rules. Of course, his political adversaries challenged his compliance with residence requirements, and City Council ordered an investigation of his residence. The result of that investigation was widely reported in the press. Legal counsel for the City Council concluded in a report to members that Mr. Deutsch was fully compliant with

the consequences already have brought stiff punishment for his errors.  We respectfully ask this Court to credit this man's overwhelming history of good deeds in declining to impose incarceration.

### A. A Sentence of Incarceration Is Not Necessary to Deter Others and Is Outweighed by the Other Sentencing Factors Which Favor a Probationary Sentence

The government's dominant theme in its sentencing memorandum is for this Court to "send a clear message that tax offenses committed by elected officials are not only wrong but carry significant personal consequences." (Gov. Sent. Mem. at 9.)  In short, the government asks this Court to overlook all of the other mitigating factors presented by Mr. Deutsch's personal history, lack of criminal history, extraordinary acceptance of responsibility, and history of community service to send a "clear message" to other possible offenders.  This argument runs counter to results of numerous studies about how severity of sentences provides little correlation to general deterrence, and more notably, fails to outweigh the other Section 3553(a) factors, which weigh heavily in favor of a probationary sentence.

Firstly, the vast amounts of research conducted on the issue of general deterrence (versus specific deterrence or incapacitation of the offender) makes clear that the chance of being arrested or "caught" is a substantially more powerful deterrent than the severity of punishment, or whether incarceration is part of the punishment imposed. *See* Daniel S. Nagin, "Deterrence in the Twenty-First Century," in *Crime and Justice:  A Review of Research,* vol. 42:  Crime and Justice in America:  1975-2025, ed. Michael Tonry, Chicago:  University of Chicago Press, 2013 (collecting and analyzing studies directed to detecting impact of sentences on deterrence of others).  Scientific studies all suggest that while prisons are good for punishing criminals and keeping them off the street, prison sentences of others provide no statistical correlation with future offenders' conduct. (*Id.*)  Despite the wealth of data on this subject, prosecutors continue to rely heavily on the need to "send messages" to others as a primary reason to impose stiffer sentences on convicted defendants.  General deterrence, however, is served by making arrests and convicting others of crimes that, regardless of jail sentences, cause severe and debilitating real-life consequences.  Here, the message is clear:  if you dedicate your life to public service and commit crime, you will lose your office; face disrepute in your communities; and suffer tremendous future financial hardship in the form of financial penalties and loss of potential employment opportunities.

---

the members' residence rules for maintaining a primary residence within the elected official's district limits.  *See* NY Daily News, Reuven Blau, "New Brooklyn City Councilman Chaim Deutsch Moves to City Hall and Into a Modest Two-Bedroom Apartment," 1/6/2014, available at: *https://www.nydailynews.com/new-york/brooklyn/brooklyn-lawmaker-chaim-deutsch-moves-city-hall-smaller-digs-article-1.1567911* ("Council lawyers have investigated and approved his residency status.")  While Mr. Deutsch was wrong for including the full rent and cost of maintenance of this apartment as a business expense on his federal tax returns, he did take on this added expense and lived there apart from his family for two years to comply with City Council residence requirements.

Hon. James L. Cott
July 28, 2021
Page 4 of 6

Secondly, here, the plethora of case law cited in Mr. Deutsch's sentencing memorandum (evaluating the unwarranted sentencing disparities factor) reveal that many similarly situated defendants convicted of *felony* tax offenses as first-time offenders do not receive sentences of incarceration. (*See* Def. Sent. Mem. at 27-30, n. 13 at 30.) (ECF Doc. 13.) Indeed, in most of these cases, the tax loss amounts are higher than those presented here. Thus, it is gross speculation to conclude that general deterrence will be achieved by imposing a prison sentence on Mr. Deutsch when many others before, and likely, after him sentenced for similar tax offenses are not. And this does not even take into account the fact that a sentence of incarceration here would be contrary to another of the federal sentencing factors: to avoid unwarranted sentencing disparities among similarly situated defendants.[2]

The cost to society of incarcerating Mr. Deutsch for this misdemeanor conduct also outweighs any vague benefit in "sending a message" to others. Here, this cost is measured more than in just the dollars spent by taxpayers in locking the defendant up, although that is a valid consideration too for federal sentencing courts. *See e.g., United States v. Prosperi*, 686 F.3d 32, 48 (1st Cir. 2012) (sentencing courts may consider the cost of incarceration as balanced against the benefits of incarceration for deterring future actors). Here, the cost to society also includes the loss of Mr. Deutsch's ability to financially provide for two minor children and his wife. To remove Mr. Deutsch from his current position as building manager for an apartment complex in Brooklyn would hurt the landlord and tenants in those buildings, who will have to start over in their search for and hiring of a new property manager, and significantly damage the well-being of Mr.

---

[2] The two felony cases from this district cited in the government's sentencing memorandum are easily distinguishable and inapposite to the facts presented here. The defendant in *United States v. Ciccarella*, 16 Cr. 738 (AKH) (S.D.N.Y. 2016), pleaded guilty to a multi-year felony tax evasion scheme in which he fraudulently diverted over $1.6 million from his business to another corporate entity, where it was later withdrawn (but not reported) for personal purposes, resulting in federal tax losses of more than $284,000, exclusive of interest and penalties. *Id.,* ECF Doc. 14, at 2 (2/27/17). The conduct of the married couple in the cases of *United States v. Jeffrey S. Stein and Marla Stein*, 15 Cr. 195 (DLC) (S.D.N.Y. 2015), is even more egregious and aggravated. In that case, the defendants engaged in a multi-year scheme to submit fraudulent tax returns, obstructed the IRS by creating false and forged supporting documentation during tax audits, and provided false testimony in tax interviews. The overall conduct, aggravated by sophisticated obstructive methods, resulted in aggregate tax losses of over $350,000, before interest and penalties. *Id.,* ECF Doc. 16, at 2-12, 15-16. These defendants are clearly not similarly situated to Mr. Deutsch. Their conduct involved aggravated circumstances of using sophisticated measures to avoid detection and actual obstructive conduct when challenged by the IRS. In stark contrast, Mr. Deutsch's conduct involved no sophisticated deceptive measures, was not aggravated under any of the Sentencing Guidelines measures, and, to his credit, Mr. Deutsch immediately confessed his wrongdoing when confronted with his tax return misstatements, saving the government considerable enforcement time and resources. The sentences of imprisonment of the *Ciccarella* and *Stein* defendants were largely driven by the need for just punishment for the severity of the offense conduct and the lack of mitigating circumstances surrounding the sophisticated schemes to evade tax payments, rather than general deterrence.

Deutsch's two minor children. In a case where there is little to no risk of recidivism, the real costs of incarceration outweigh any undefined benefit in general deterrence.

### B. Just Punishment Can Be Served Without Requiring a Prison Term

Not all criminal convictions should result in prison sentences. Indeed, when Congress created the federal Sentencing Guidelines in the Sentencing Reform Act of 1984, it actually expressed the notion that first offenders who commit non-violent and otherwise less serious offenses should ***not*** receive prison sentences. *See* 28 U.S.C. 994(j). Sometimes, respect for the law may be promoted when a court imposes a thoughtful sentence that does not start and end with months or years of imprisonment. When a court carefully balances the life history of the defendant against the severity of the offense conduct and concludes that it is appropriate to credit the individual's personal history, rather than an arithmetical calculus of months of prison time based on a Sentencing Table, the rule of law is enhanced. It is enhanced because society sees that the law recognizes individual differences and can be nuanced and compassionate in imposing punishment. That nuance and careful consideration of the individual who appears before the Court for sentencing is what we respectfully urge from the Court in this case. Indeed, even the government showed its ability to differentiate between cases and conduct in tax offenses by deciding to charge Mr. Deutsch with a misdemeanor in the first place. This same analysis as applied to sentencing alternatives to imprisonment acts "to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. 3553(a)(2).

Community service can also be an appropriate sanction. In a financial fraud case, Judge Gleeson sentenced a defendant to community service, in a case where the offense conduct led to a $110 million loss:

> [N]othing should ever be out of bounds . . . and I conclude that a sentence that doesn't include incarceration is appropriate here. Alternatives to incarceration exist that can carry both the community's and the Court's condemnation of your conduct but channel it in a way that's more constructive, given your significant charitable works and contributions before this case, given the extraordinary timing of your cooperation and its nature, given your age and your physical circumstances. I don't think the goals of sentencing here require you to be incarcerated.

*United States v. Shamilzadeh*, No. 04 Cr. 194 (JG) (E.D.N.Y. Apr. 1, 2008).

Incarcerating Mr. Deutsch will do little to help his community or Mr. Deutsch's family. It also would not serve as any more significant of a deterrent to others who have considered committing the same kind of tax offense. Instead, substituting probation and community service for any term of imprisonment would create a greater benefit overall, while still maintaining the goals and aims of federal sentencing.

Hon. James L. Cott
July 28, 2021
Page 6 of 6

                                Respectfully Submitted,

                                */s/ Henry Mazurek*

                                Henry E. Mazurek
                                *Counsel for Defendant Chaim Deutsch*

cc:      Counsel of Record (*via ECF*)