

*Henry E. Mazurek*
*Partner*
Direct (212) 655-3594
Fax (212) 655-3535
hem@msf-law.com

October 12, 2021

**VIA ECF**

Hon. James L. Cott
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  *United States v. Chaim Deutsch,* No. 21 Cr. 264 (JLC)

Dear Judge Cott:

I write on behalf of defendant Chaim Deutsch, who was sentenced on July 29, 2021 to three months imprisonment in the custody of the U.S. Attorney General. At Mr. Deutsch's sentencing hearing, this Court also set a status conference to be held on Thursday, October 14, 2021, to evaluate the state of conditions at the federal Bureau of Prisons ("BOP") facility to which Mr. Deutsch is scheduled to report. On or about October 4, 2021, we were notified that Mr. Deutsch had been designated to the FCI Otisville Satellite Camp ("Otisville SCP"). I write now to report the current conditions at Otisville SCP. Despite the fact that this facility (like most BOP facilities at this time) is still quarantining inmates in isolation at intake/outtake for a minimum period of 14 days each, Mr. Deutsch is prepared to report on the date ordered by this Court. We, therefore, move to vacate the scheduled conference date of October 14, 2021.

I. **Procedural History**

At Mr. Deutsch's sentencing hearing, undersigned counsel informed the Court generally of the modified operations employed by the BOP to curb the spread of the COVID-19 contagion inside prison facilities, including the use of solitary confinement to quarantine inmates during intake to the facility and for preparing for an inmate's release to the public. (Tr. 7/29/2021 at 60-70) (Ex. A). In response, the Court scheduled a separate conference date (October 14, 2021) for the parties to report on BOP operations, including restricted movement conditions, closer to Mr. Deutsch's report date. In particular, the Court noted:

> I obviously am not interested in imposing a sentence that effectively results in Mr. Deutsch being subject to solitary confinement for the

>majority of the time I'm imposing here, that certainly is not my intention. Solitary confinement is not intended for members of the general population at a facility unless something has justified that.

(Tr. 7/29/2021 at 61, Ex. A.)

## II.   Modified Operations at SCP Otisville

On August 24, 2021, the BOP introduced COVID-19 Operational Levels (Levels 1-3) that govern infection procedures or modifications to operations, including restrictions on inmate movement. *See* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp. (relevant sections attached at Ex. B). Level 1 operations are closest to normal conditions and Level 3 is the most restrictive due to continuing concerns of persistently high COVID-19 transmission rates. Otisville SCP currently operates under the highest level of COVID-19 pandemic procedure modifications – **Operational Level 3** – under BOP policy. *See* https://www.bop.gov/locations/institutions/otv/ (identifying operational level at FCI Otisville). This generally means the facility is employing the BOP's full COVID-19 Pandemic Plan, limiting movement, restricting programming and services, and reducing social and legal visits. At Operational Level 3, Otisville SCP still employs a minimum 14-day[1] transfer quarantine – meaning camp inmates are placed in solitary confinement at FCI Otisville's medium security cells to quarantine. This is applied to *all* inmates (vaccinated and unvaccinated inmates) upon their preparation for release. In addition, unvaccinated inmates are placed in complete intake quarantine upon their arrival at the institution, meaning another minimum of 14 days in isolation. *See* Ex. B, "Inmate Movement Modifications." Unvaccinated inmates, therefore, face a minimum of 28 days (and usually longer) in solitary confinement at SCP Otisville (including transfer in/transfer out quarantines). The BOP does not mandate vaccination under existing federal law.

For religious and personal reasons, Mr. Deutsch remains unvaccinated, so he faces the full minimum of 28 days (and more practically, closer to 40 days) in isolation in a cell at the FCI Otisville Medium Security facility, where Otisville SCP inmates are taken to complete the quarantine periods. Of course, this means that approximately 45 percent of Mr. Deutsch's sentence will likely be served in isolation. The harmful impact of solitary confinement as a means of

---

[1] Based on reports from current and recently released inmates at SCP Otisville, prison officials are actually employing an 18-22 day period of isolation for quarantine. This is because prior to an inmate's release into general prison population at intake or released to the public upon service-time completion, the facility must receive results of Point-of-Care ("POC") PCR COVID-19 testing. These tests are usually not administered until the 14th day of isolation, and the facility must receive a negative result before removing the inmate from quarantine. Test results generally take 2-3 days to be reported. (Also, no transfers or test results are acted upon on weekends, therefore, if the 14th day falls on a Saturday, or test results are received on a weekend, the inmate must remain in solitary confinement until Monday.) Thus, to begin the process of transferring an inmate for public release, he or she is removed to isolation to begin quarantining 21 days before the scheduled release date. This ensures that the facility will have the results of the COVID-19 POC test prior to the date of mandatory release.

containing COVID-19 in federal prisons, including at Otisville SCP, has been widely reported in the media. A recent *Forbes* article illustrated the conundrum facing prison officials responding to a pandemic in a communal prison camp setting:

> One would probably assume that the use of solitary confinement, no matter how cruel, would be reserved for the most hardened criminals who have resorted to violence in prison. But men and women in federal prison camps, who have done nothing more than be exposed to COVID-19, are now being locked up for extended periods of time.
>
> FCI Otisville (New York) satellite camp has had its minimum security camp inmates locked up in cells since mid-June [2020], already twice the United Nations standard for cruel and inhumane. It is also the second such lock-ups these inmates have experienced since April 2020 when the camp put people in quarantine after being told that they would be transferring to home confinement. After weeks locked in cells, many of them were told that they would not be going home, but would resume their sentence back at the camp which was declared COVID-19-FREE. A few weeks later, a positive COVID-19 test led to the return to quarantine in the higher security prison cells.

Walter Pavlo, "Bureau of Prisons Using Solitary Confinement As a Means To Curb Covid-19 Contagion," *Forbes*, July 16, 2020 (at Exhibit C).

Otisville SCP continues to use the higher medium security FCI Otisville cells to isolate camp inmates during quarantine, requiring inmates to eat meals in their cells, have no visitors, and spend limited time (usually under 30 minutes per day) outside their cells to shower and make one phone call. While this isolation is meant to protect prisoners and the public from contracting COVID-19, it creates torturous mental health conditions from the stress of isolation. Public health officials have warned prison officials that they should not "fall back on policies that subject people to living conditions known to harm their health," including conditions of solitary confinement. *See* David H. Cloud, et al., *Medical Isolation and Solitary Confinement: Balancing Health and Humanity in US Jails and Prisons During COVID-19*, 35 J. Gen. Internal Med. 2738, 2740 (2020).

Because prisons are not particularly good at the delicate balancing between medical isolation and solitary confinement, they fall back on their usual way of doing things to accomplish one goal over another. This results in minimal security risk inmates being placed in solitary confinement to accomplish the goal of medical isolation. Of course, solitary confinement is a punitive environment of enormous deprivation, which causes, even under the best of circumstances, psychological deterioration. Cloud, et al, *supra*, at 2739-40.

Despite these ongoing conditions at SCP Otisville, Mr. Deutsch greatly desires to obtain closure in his criminal case, complete his sentence, gain employment stability, and be able to plan the future with his family. Delaying his report date for service of this sentence does not allow him

to accomplish these important goals. Certainly, there is no indication under current pandemic conditions, including variant deviations and the onset of the more infection-friendly winter season, that the operations at SCP Otisville, or other BOP facilities for that matter, will change in the coming months. Thus, Mr. Deutsch confronts the conundrum of waiting interminably to serve his sentence or accept the harsher confinement conditions of serving possibly nearly half his sentence in isolation. This is not an easy or comfortable choice for Mr. Deutsch, but he is prepared to accept the prison conditions that await him.

Mr. Deutsch does not want to delay the service of his sentence further. He believes the uncertainty of his service time compromises his employer's ability to schedule a temporary replacement hire to cover for Mr. Deutsch during his absence. Delaying his report date to Otisville, therefore, could possibly cost Mr. Deutsch his job. He now has stable and secure employment as a property manager in Brooklyn. He cannot secure his future at this job, however, if he cannot commit to his employer about when he would have to leave to serve his sentence. All things being equal, Mr. Deutsch prefers to put his family's interests in his ability to secure long-term employment upon his release over the punitive consequences of serving over a month in solitary confinement because he chooses to serve his sentence now.

Of course, these are traumatic times for us all. However, our prison population suffers in greater proportion to the rest of society during a public health crisis. *See* Tiana Herring and Maanas Sharma, "States of Emergency: The failure of prison system responses to COIVD-19," Prison Policy Initiative, at https://www.prisonpolicy.org/reports/states_of_emergency.html. Mr. Deutsch is prepared to pay his debt to society for his misdemeanor conviction. It is simply unfortunate that his sentence will be more punitive than those similarly situated offenders who were sentenced in non-pandemic times.

Because Mr. Deutsch is prepared to report as directed by the Court, we move to vacate the Court's previously scheduled status conference on October 14, 2021.

                                  Respectfully Submitted,

                                  Henry E. Mazurek
                                *Counsel for Defendant Chaim Deutsch*

cc:      Counsel of Record (*via ECF*)